UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


UNITED STATES OF AMERICA,        )
                                 )
      Plaintiff,                 )
                                 )
      v.                         )
                                 )   No. 4:08-CR-421 RWS
                                 )
BILL ANTHONY JAKOB,              )
                                 )
      Defendant.                 )


PLEA HEARING

BEFORE THE HONORABLE RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE


SEPTEMBER 29, 2008

APPEARANCES:

For Plaintiff:        Hal Goldsmith, Esq.
                      OFFICE OF U.S. ATTORNEY
                      111 South Tenth Street, 20th Floor
                      St. Louis, MO  63102


For Defendant:        Joel J. Schwartz, Esq.
                      ROSENBLUM AND SCHWARTZ
                      120 South Central, Suite 130
                      Clayton, MO  63105


REPORTED BY:          SHANNON L. WHITE, RMR, CRR, CSR, CCR
                      Official Court Reporter
                      United States District Court
                      111 South Tenth Street, Third Floor
                      St. Louis, MO  63102
                      (314) 244-7966


PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

**(PROCEEDINGS STARTED AT 10:15 AM.)**

**(THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT AND WITH THE DEFENDANT PRESENT.)**

THE COURT: Morning. We are here this morning in the case styled United States of America against Bill Anthony Jakob, Cause No. 4:08-CR-421. Would counsel make their appearances, please?

MR. GOLDSMITH: Morning, Judge. Hal Goldsmith, along with Nick Koechig from Defense Criminal Investigative Services, on behalf of the United States.

MR. SCHWARTZ: Your Honor, Joel Schwartz on behalf of defendant, Bill Anthony Jakob, who is present in court.

THE COURT: Okay. Counsel, it's my understanding that Mr. Jakob is present today for the purpose of changing his pleas from not guilty to guilty; is that correct?

MR. SCHWARTZ: That is correct, Your Honor.

THE COURT: And those change in pleas are being made in conjunction with the filing of a plea agreement, guidelines recommendations, and stipulations; is that correct?

MR. SCHWARTZ: Yes, sir.

THE COURT: Mr. Jakob, I have no doubt that your attorney has told you I'm going to ask you a lot of questions. If at any time I ask you a question and you're not sure you understand what I'm asking you, will you promise me that you'll tell me that, and I will repeat or rephrase my question

1    until it's clear that you and I understand each other?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  We're not in a hurry, so if at any time

4    you feel you need to consult with your attorney, will you

5    promise me that you'll tell me that, and I'll take a break and

6    give you whatever time you need to talk to your lawyer?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Because your answers to my questions are

9    to be under oath, at this time the clerk of the court will

10   administer the oath to you, sir.

11                **(DEFENDANT SWORN BY THE CLERK.)**

12                          **EXAMINATION**

13   **BY THE COURT:**

14   Q    Do you understand that you've now been sworn and that

15   your answers to my questions are subject to the penalties of

16   perjury if you do not answer truthfully?

17   A    Yes, sir.

18   Q    The first series of questions I'm going to ask you are to

19   establish that you're competent to make the decision you're

20   making today.  How old a man are you, sir?

21   A    Thirty-six.

22   Q    What's the highest level of education which you've

23   completed?

24   A    Some college.

25   Q    So you didn't have any trouble reading the plea

1    agreements or any of the documents in this case?

2    A    No, sir.

3    Q    Do you have a doctor or a physician you see on a regular

4    basis?

5    A    Yes, sir.

6    Q    Have you ever been told by any health care provider that

7    you have any chronic or long-term illnesses?

8    A    No, sir.

9    Q    Are you taking any prescription medication of any kind?

10   A    No, sir.

11   Q    Is there any prescription medication you're supposed to

12   be taking, but for some reason you're not taking it?

13   A    No, sir.

14   Q    Are you under the care of a psychiatrist or psychologist?

15   A    No, sir.

16   Q    Have you ever been under the care of any sort of mental

17   health care provider?

18   A    No, sir.

19   Q    Have you taken any drugs or medicine or drunk any alcohol

20   in the last 24 hours?

21   A    No, sir.

22   Q    Are you under the influence of drugs or alcohol as you

23   stand here right now?

24   A    No, sir.

25   Q    Do you understand what's happening today and why you're

1    here?

2    A     Yes, sir.

3          THE COURT:  Does the attorney for the United States

4    or the attorney for Mr. Jakob have any doubt as to his

5    competency?

6          MR. GOLDSMITH:  No, Judge.

7          MR. SCHWARTZ:  No, Your Honor.

8    Q    (BY THE COURT) It is my finding that Mr. Jakob is

9    competent to proceed.

10          Do you understand, sir, that because this is a

11    criminal case, you have the right to be represented by an

12    attorney at all stages of the proceedings, and if for any

13    reason you're unable to afford an attorney, one is appointed

14    to represent you at the expense of the United States

15    Government?

16    A     Yes, sir.

17    Q     Have you had enough time to discuss your case with your

18    attorney?

19    A     Yes, sir.

20    Q     Are you satisfied with his representation of you in this

21    case?

22    A     Yes, sir.

23    Q     Is there anything you think your attorney should have

24    done but did not do in representing you?

25    A     No, sir.

1  Q    I'm going to ask you some questions now about the rights

2  that you're giving up by pleading guilty.  Do you understand

3  that if you plead not guilty, that you are entitled to a

4  speedy and public trial by a judge or by a jury?

5  A    Yes, sir.

6  Q    Do you understand at trial you're presumed innocent and

7  the burden of proof is on the United States to prove you

8  guilty by competent evidence and beyond a reasonable doubt?

9  A    Yes, sir.

10 Q    The presumption of innocence alone is enough to find you

11 not guilty until the Government bears its burden of proof.

12 You understand that?

13 A    Yes, sir.

14 Q    Do you understand that in a trial the United States would

15 have to bring its witnesses into this courtroom, those

16 witnesses would have to testify in your presence, your

17 attorney could cross-examine those witnesses, object to the

18 evidence, and could call witnesses and offer evidence on your

19 behalf?

20 A    Yes, sir.

21 Q    Do you understand that at a trial you have the right to

22 testify, and you also have the right not to testify?

23 A    Yes, sir.

24 Q    And no one could suggest to the jury that you were guilty

25 because you did not testify.  Do you understand that?

```
 1   A     Yes, sir.
 2   Q     Do you understand that by pleading guilty you're waiving
 3   your rights to a trial and the other rights associated with a
 4   trial?
 5   A     Yes, sir.
 6   Q     Do you understand there's not going to be a trial?
 7   A     Yes, sir.
 8   Q     But a judgment of guilty will be entered and sentence
 9   will be imposed just as though you were found guilty after a
10   trial?
11   A     Yes, sir.
12   Q     Do you understand that if you plead guilty, that you're
13   waiving your right against self-incrimination, because I'm
14   going to ask you if you did what they say you did?  Do you
15   understand that?
16   A     Yes, sir.
17   Q     Having discussed your rights with you, sir, is it still
18   your decision to plead guilty?
19   A     Yes, sir.
20   Q     Has anybody threatened you or in any way forced you to
21   plead guilty?
22   A     No, sir.
23   Q     There's a plea agreement.  If we look at the last page,
24   the page marked 27, there are three signatures.  The middle
25   signature purports to be your signature.  Is that your
```

1  signature, sir?

2  A    Yes, sir.

3  Q    Did you read this document before you signed it?

4  A    Yes, sir.

5  Q    Did you go over it with your lawyer?

6  A    Yes, sir.

7  Q    Did he answer all your questions?

8  A    Yes, sir.

9  Q    Do you believe you understand what's in this document?

10  A    Yes, sir.

11  Q    Is everything in here true?

12  A    Yes, sir.

13  Q    Is there anything in here you don't agree with, but just

14  to get it over with you went ahead and signed it anyway?

15  A    No, sir.

16  Q    You understand that sentencing doesn't take place for

17  several months.  In fact, it will be probably middle of

18  December before you're sentenced.  Do you understand that?

19  A    Yes, sir.

20  Q    And that before you're sentenced, a presentence report is

21  prepared.  Do you understand that, sir?

22  A    Yes, sir.

23  Q    That report will discuss the facts of your case and apply

24  the sentencing guidelines to those facts.  Do you understand

25  that?

1   A    Yes, sir.

2   Q    And you've talked to your lawyer about the sentencing

3   guidelines and how they work?

4   A    Yes, sir.

5   Q    The report will also make a calculation on the sentencing

6   table as to what the recommended range of punishment is.  Do

7   you understand that?

8   A    Yes, sir.

9   Q    Your plea agreement has a stipulated sentence and

10   guideline range in it, you understand?

11   A    Yes, sir.

12   Q    If you disagree with what's in the report -- you may

13   disagree with the facts, how they're set out, how the

14   guidelines are applied, or how the recommended sentence is

15   calculated.  But if you disagree with any of those things, you

16   will have the right to file objections to the report.  Do you

17   understand that, sir?

18   A    Yes, sir.

19   Q    The Government may object to the report.  Do you

20   understand that?

21   A    Yes, sir.

22   Q    If there are objections, we'll have a hearing and I'll

23   rule on the objections, and then I'll make a final calculation

24   on the guideline chart as to what the recommended sentence is.

25   Do you understand that?

1  A    Yes, sir.

2  Q    We will also determine if there are any departure

3  motions.  Those are motions under the guidelines which would

4  encourage a sentence that's more than or less than the

5  recommended sentence.  Do you understand that, sir?

6  A    Yes, sir.

7  Q    There is a statute that lists a number of factors I'm

8  required to consider before I can determine the appropriate

9  sentence in your case.  Do you understand that?

10  A    Yes, sir.

11  Q    Let's go through your plea agreement.  The plea agreement

12  says that you have agreed to plead guilty to Counts I through

13  XXIII of the indictment.  Do you understand that?

14  A    Yes, sir.

15  Q    And the United States has agreed not to bring any other

16  prosecution in this district arising out of your scheme to

17  defraud Total Lock and Security Company and its affiliated

18  businesses during the period January 2007 through January

19  2008, your false impersonation of federal employees and

20  federal law enforcement officers during the period August 2007

21  through May 2008, and your false statements to federal law

22  enforcement on May 9 of 2008.  Do you understand that, sir?

23  A    Yes, sir.

24  Q    You understand what's in this agreement -- well, because

25  there is a stipulated sentence, let me talk about that for a

1  second.  You've stipulated that the guideline range will

2  result in a sentence of 60 to 69 months.  Do you understand

3  that?

4  A    Yes, sir.

5  Q    And it may be that that guideline range, once it's

6  calculated under the guidelines by the probation office, will

7  be maybe more than that.  It may be less than that.  Do you

8  understand that?

9  A    Yes, sir.

10  Q    But your agreement is to be sentenced within the range of

11  60 to 69 months.  Do you understand that?

12  A    Yes, sir.

13  Q    And so you've reserved the right and the United States

14  has reserved the right to withdraw this guilty plea and the

15  plea agreement if the guideline range is something other than

16  60 to 69 months or, more specifically, if I sentence you to a

17  range or a sentence other than a sentence within the range of

18  60 to 69 months.  Do you understand that?

19  A    Yes, sir.

20  Q    If I sentence you consistent with the recommendations in

21  the plea agreement, you've agreed not to appeal the sentence

22  that's imposed.  Do you understand that?

23  A    Yes, sir.

24  Q    I mean, it's possible you understand -- let me go back.

25  It's possible I read the presentence report and say no way am

1  I going to impose a 60- to 69-month sentence.  Then I will

2  give you the option to withdraw your guilty plea.

3  A    Yes, sir.

4  Q    But that will be your choice at that time.  You

5  understand that?

6  A    Yes, sir.

7  Q    If I sentence you consistent with the recommendations in

8  the plea agreement, you've also agreed not to file any other

9  motions or any other lawsuits challenging how your case has

10  been handled except for a claim you may have for misconduct by

11  the prosecutor or ineffective assistance by your lawyer.  Do

12  you understand that?

13  A    Yes, sir.

14  Q    Now, if any property was seized from you by law

15  enforcement officials during this investigation, and perhaps

16  there were weapons that they seized from you or any other

17  materials, you've agreed to forfeit, or give up, any ownership

18  interest you have in that property.  Do you understand that?

19  A    Yes, sir.

20  Q    Beginning on page 6 is a -- and this is a relatively

21  lengthy discussion given the large number of counts -- is a

22  discussion about how it is proposed that the guidelines work

23  in your case.  As to Counts I and II, it's recommended that

24  your base offense level is a 7.  Do you understand that, sir?

25  A    Yes, sir.

1  Q    That's that calculation that goes down the side of the

2  guidelines chart.  Do you understand that?

3  A    Yes, sir.

4  Q    It's recommended that 8 levels be added because the loss

5  was more than $70,000 but less than $120,000.  Do you

6  understand that, sir?

7  A    Yes, sir.

8  Q    It's recommended that two levels be added because the

9  offense involved the misrepresentation that you were acting on

10  behalf of a government agency.  Do you understand that?

11  A    Yes, sir.

12  Q    And two levels should be added because what you did was a

13  relatively sophisticated scheme.  Do you understand that?

14  A    Yes, sir.

15  Q    And two levels should be added because you abused a

16  position of trust in a manner that significantly facilitated

17  the commission or concealment of the offense.  Do you

18  understand that, sir?

19  A    Yes, sir.

20  Q    And that up to three levels be subtracted for your

21  acceptance of responsibility in a timely fashion.  Do you

22  understand that?

23  A    Yes, sir.

24  Q    As a result, it's recommended that your total offense

25  level in Counts I and II is an 18.  Do you understand that?

1  A    Yes, sir.

2  Q    And if it was an 18, then the guideline range for that is

3  27 to 33 months.  Do you understand that, sir?

4  A    Yes, sir.

5  Q    As to Counts III and IV, the base offense level is a 6.

6  Do you understand that?

7  A    Yes, sir.

8  Q    And again, two levels are to be added because you abused

9  a position of trust in a manner that significantly facilitated

10  the commission or concealment of the offense.  Do you

11  understand that?

12  A    Yes, sir.

13  Q    And in this instance up to two levels may be subtracted

14  for acceptance of responsibility in a timely fashion.  Do you

15  understand that, sir?

16  A    Yes, sir.

17  Q    As to Counts V through XXII, the base offense level is a

18  6.  Do you understand that?

19  A    Yes, sir.

20  Q    It's recommended that 6 levels be added because you --

21  the conduct in which you engaged, that is, an impersonation

22  was committed for the purpose of conducting an unlawful

23  arrest, detention, or search.  Do you understand that, sir?

24  A    Yes, sir.

25  Q    Two levels are recommended to be added because one or

1 more victims were physically restrained in the course of the

2 offense.  Do you understand that?

3 A    Yes, sir.

4 Q    Two levels are recommended to be added because you abused

5 a position of trust in a manner that significantly facilitated

6 the commission or concealment of the offense.  Do you

7 understand that?

8 A    Yes, sir.

9 Q    And again, another two levels are recommended to be added

10 because you willfully obstructed or impeded or attempted to

11 obstruct or impede the administration of justice with respect

12 to the investigation or prosecution of this offense; that your

13 conduct of obstruction related to the offense of conviction.

14 Do you understand that, sir?

15 A    Yes, sir.

16 Q    Again, now up to three levels may be subtracted for your

17 acceptance of responsibility in a timely fashion.  Do you

18 understand that?

19 A    Yes, sir.

20 Q    And it's recommended that five levels be added because of

21 the nature of the -- when we're putting all those counts

22 together, that's called grouping rather than doing each one at

23 a time, so that five levels are to be added because of the

24 grouping nature of the counts.  Do you understand that?

25 A    Yes, sir.

1   Q    Have you talked to your lawyer about that?

2   A    Yes, sir.

3   Q    And you understand that?

4   A    Yes, sir.

5   Q    As to Count XXIII, the base offense level is a 6.  Do you

6   understand that, sir?

7   A    Yes, sir.

8   Q    And up to two levels may be subtracted for your

9   acceptance of responsibility in a timely fashion.  Do you

10  understand that?

11  A    Yes, sir.

12  Q    As a result, your recommended total offense level in

13  Count XXIII is a 4.  Do you understand that?

14  A    Yes, sir.

15  Q    The recommended total offense level on Counts V through

16  XXII was a 20.  Do you understand that, sir?

17  A    Yes, sir.

18  Q    And that's a guideline range of 33 to 41 months.  Do you

19  understand that?

20  A    Yes, sir.

21  Q    And actually, that's lower because the maximum on any one

22  count was 36 months, so it would revert to a 33- to a 36-month

23  guideline range.  Do you understand that?

24  A    Yes, sir.

25  Q    There is no -- now, after all that, you've entered into

1    an agreement with the Government that the estimated sentence

2    under Count I and II of 27 to 33 months should run consecutive

3    to the estimated sentence under Counts V through XXII for a

4    total advisory recommended sentence of 60 to 69 months.  Do

5    you understand that?

6    A     Yes, sir.

7    Q     There is no agreement as to what your criminal history is

8    or how it's to be treated by the guidelines.  Do you

9    understand that, sir?

10    A     Yes, sir.

11    Q     Now, for you to have been found guilty on Count I, the

12    United States would had to have proved four things:  That you

13    devised intended to devise, and knowingly participated in the

14    scheme to deprive and defraud Total Lock of the right to its

15    honest services and to obtain money from Total Lock by means

16    of materially false representations of promises; second, you

17    did so with the intention to defraud; third, it was reasonably

18    foreseeable that interstate wire communications would take

19    place, and in fact, an interstate wire communication took

20    place in furtherance of an essential step of the scheme.  Do

21    you understand that, sir?

22    A     Yes, sir.

23    Q     If you don't believe the United States could prove all of

24    those things, you should not be pleading guilty to Count I

25    today.  Do you understand that?

1  A    Yes, sir.

2  Q    As to Count II, the United States would had to have

3  proved four things:  That you devised, and intended to devise,

4  and knowingly participated in a scheme to defraud and deprive

5  Total Lock of the right of their honest services, and to

6  obtain money from Total Lock by means of materially false

7  representations and promises; and that you did so with the

8  intent to defraud; it was reasonably foreseeable that the mail

9  would be used; and in fact, the mail was used in some

10 essential step of the scheme.  Do you understand that, sir?

11 A    Yes, sir.

12 Q    Again, if you don't believe the United States could prove

13 all of those things beyond a reasonable doubt, you should not

14 plead guilty today.  Do you understand that?

15 A    Yes, sir.

16 Q    As to Counts III and IV, the United States would had to

17 have proved that you pretended to be a contracting officer

18 with the United States Army Corps of Engineers; and that that

19 pretense was false and you knew it was false; and while so

20 pretending, you acted with the intent to cause a person or

21 entity to cause some course of action.  Do you understand

22 that?

23 A    Yes, sir.

24 Q    Again, if you don't believe the United States could prove

25 all of those things beyond a reasonable doubt as to Counts III

1  and IV, you should not be pleading guilty today.  Do you

2  understand that?

3  A    Yes, sir.

4  Q    As to Counts V through XXII, the United States would had

5  to have proved beyond a reasonable doubt that you pretended to

6  be a United States Drug Enforcement Administration special

7  agent, a United States Marshal, or a special agent of the

8  United States Department of Justice Multi Jurisdictional

9  Narcotics Task Force; and such pretense was false and you knew

10 it was false; that you did so while so pretending, acted with

11 the intent to cause a person or entity to follow some course

12 of action; and while so pretending, you engaged in arresting

13 or detaining an individual or in searching the person's

14 building or other property.  Do you understand that, sir?

15 A    Yes, sir.

16 Q    If you don't believe that the United States could prove

17 each of those things beyond a reasonable doubt as to each of

18 Counts V through XXII, you should not be pleading guilty

19 today.  Do you understand that?

20 A    Yes, sir.

21 Q    As to Count XXIII, the United States would had to have

22 proved beyond a reasonable doubt that you knowingly,

23 voluntarily, and intentionally made a false, fictitious, and

24 fraudulent statement in an investigation being conducted by

25 the Federal Bureau of Investigations; that the statement was

1   material to the investigation of the FBI; and the

2   investigation being conducted by the Federal Bureau of

3   Investigation was a matter within the jurisdiction of the FBI.

4   Do you understand that?

5   A    Yes, sir.

6   Q    And if you don't believe the United States could prove

7   each of those things beyond a reasonable doubt as to Count

8   XXIII, you should not plead guilty today.  Do you understand

9   that?

10  A    Yes, sir.

11  Q    Does this agreement contain all the promises made to you

12  by the United States?

13  A    Yes, sir.

14  Q    Did they promise you anything they didn't put in writing?

15  A    No, sir.

16  Q    You understand I'm asking that to protect you, because if

17  you're pleading guilty today and it's based on some promise or

18  anything that was offered to you by the United States, I need

19  to know about it so I can make sure you get the benefit of

20  that promise.

21  A    Yes, sir.

22  Q    Everything is in writing; is that right?

23  A    Yes, sir.

24  Q    Has anybody else offered you anything or given you

25  anything to get you to plead guilty today?

1　　　　　MR. SCHWARTZ:　Your Honor, may we approach, Mr.

2　Goldsmith and I?

3　　　　　THE COURT:　Yeah.

4　　**(A SEALED BENCH CONFERENCE WAS HELD ON THE RECORD BUT NOT**

5　　　　　　　　　**INCLUDED IN THE TRANSCRIPT)**

6　　　**(THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT:)**

7　Q　(BY THE COURT) Has anyone else given you anything or

8　offered you anything to get you to plead guilty today?

9　A　　No, sir.

10　Q　　Are you pleading guilty to protect somebody else or cover

11　up for somebody else?

12　A　　No, sir.

13　Q　　I'm going to ask the Assistant U.S. Attorney to tell us

14　what facts the United States believes it would have been able

15　to prove had there been a trial, and by prove, I mean prove

16　beyond a reasonable doubt.　And, Mr. Jakob, if you would

17　listen carefully, because when he's done, I'm going to ask you

18　if you did what he says you did.

19　　　　　MR. GOLDSMITH:　Judge, should this matter have gone

20　to trial, the Government would prove by competent evidence and

21　beyond a reasonable doubt:　First, as to Counts I through IV,

22　the company, the victim company in this case, is Total Lock

23　and Security.　I'm going to just refer to them as Total Lock.

24　But that was a company which sold doors and locks to

25　commercial customers and United States Government agencies.

1   Their offices were in Maryland Heights, Missouri, here in the

2   Eastern District of Missouri.

3         There was a related company called The Installers

4   Company, related in a sense that they were owned by the same

5   individuals.  And that company, The Installers Company,

6   installed doors and locks.  That's again for commercial

7   customers and United States Government agencies.  They also

8   had offices here in the Eastern District of Missouri.

9         During January 2007, Your Honor, the evidence would

10   show that this defendant, Bill Jakob, applied for a position

11   with Total Lock and was hired as a dispatcher.  A few months

12   later, during April of 2007, Total Lock promoted this

13   defendant, Bill Jakob, to salesperson, a position of trust

14   within that company, with the primary focus on military and

15   other government agency sales.  This defendant received a

16   salary and benefits, including the use of a vehicle from Total

17   Lock.

18         From that period, from January 2007 and continuing

19   through January of 2008, this defendant, Bill Jakob, devised,

20   intended to devise, and knowingly participated in a scheme to

21   defraud and deprive Total Lock of the right to his honest

22   services, and to obtain money from Total Lock by means of

23   materially false and fraudulent pretenses, representations,

24   and promises.

25         On or about January 2 of 2007, this defendant, when

1　he was making application to Total Lock, made certain false

2　representations in the written application and during the

3　interview for employment, including he falsely represented

4　that he had retired from the United States Army during January

5　2007 at the rank of E-8, first sergeant.  He falsely

6　represented that he had served multiple overseas tours of duty

7　and was injured while serving in the Army.  And he falsely

8　represented that he had graduated from the University of

9　Missouri at Columbia with a degree in history.

10　　　　　In reality, this defendant had served -- never served

11　in the Army, but he had served in the Missouri Army National

12　Guard where he received an other than honorable discharge with

13　the rank of E-1 during June of 2006.  He never received a

14　degree from the University of Missouri at Columbia.  And based

15　on those false representations, he was hired by the company.

16　　　　　During July 2007, when this defendant was acting as a

17　sales representative of Total Lock, he represented to the

18　owners of Total Lock that he had negotiated and made a sale of

19　140 sophisticated electronic locksets to the United States

20　Army Corps of Engineers for approximately $38,000.

21　　　　　On or about July 31 of 2007, this defendant submitted

22　documents to Total Lock falsely representing that sham lockset

23　sale in which he provided false information as to a purported

24　Corps of Engineers contracting officer involved in the sale.

25　　　　　This defendant established an e-mail account through

the company Hotmail, and the account name was

uscorpsofengineers@hotmail.com.  He falsely represented that

e-mail account to be a true e-mail account address for the

purported Corps of Engineer contracting officer relative to

that sale.

He went so far as to falsely identify that Corps of

Engineer contracting officer as Lisa Kennedy.  In reality, and

as part of the scheme, the account was again one which this

defendant maintained and used to carry out the scheme, and

there existed no Corps of Engineers contracting officer named

Lisa Kennedy.  That was just a false persona that this

defendant assumed.

Also in July of 2007, based upon this defendant's

false representations, Total Lock unwittingly sent via e-mail

a job order quote to the purported Corps of Engineers

contracting officer at that Hotmail e-mail address in the

amount of $38,070 relative to that sham sale.

During August the defendant continued to falsely

identify himself as Lisa at the Corps of Engineers, again

using that sham e-mail account.  He responded to Total Lock

that the job order quote was accepted as is.

During September of 2007, this defendant, again

falsely identifying himself as Corps of Engineers contracting

officer and using that e-mail account, advised Total Lock that

the Corps of Engineer wants to multiply the lockset order four

1  times, with delivery during November of 2007.  Again, based

2  upon this defendant's false representations, the company

3  prepared a job order quote for the now 564 sophisticated

4  locksets for the Corps of Engineers in the amount of $152,280.

5          During September the defendant falsely identified

6  again himself as the Corps of Engineer contracting officer

7  Lisa Kennedy, using that e-mail account provided Total Lock

8  with a false purchase order number relative to now the

9  increased sham locksets sale.

10          The defendant continued to represent himself falsely

11  as Lisa Kennedy, continued to use that e-mail account, and

12  made certain other false representations to Total Lock,

13  including that he wanted them to handle the installation and

14  went so far as to provide them a purchase order for the

15  installation.

16          During September also this defendant falsely

17  represented to Total Lock that he negotiated an additional

18  sale to the Corps of Engineer, this time of 850 sophisticated

19  locks for a price this time of $233,750.

20          During October 4, 2007, again falsely portraying

21  himself as he Army Corps of Engineer contracting officer and

22  using that e-mail account, the defendant falsely advised Total

23  Lock to go ahead and proceed with the order for the

24  replacement locks, and he provided them again a second sham

25  purchase order relative to the new lockset sale.

During October of 2007, again based upon this defendant's false representations, The Installers Company, that related company to Total Lock, did in fact order the 564 locksets from its supplier in South Dakota for a total price of $91,847, with those locksets to ship from its supplier to the Corps of Engineers at an address to be provided by this defendant in Memphis, Tennessee.

The Installers Company, also on October 15 of 2007, mailed a check for $30,615.80 to its supplier, Quest, in North Dakota -- or excuse me, South Dakota, which represented one-third of the total cost of that locksets sale relative to that sale.

On numerous occasions during October and November of 2007, this defendant, using that Hotmail e-mail account, provided additional false information to Total Lock relative to both the original sham lockset sale and the sham replacements lock sale, again purportedly from the Corps of Engineers.

During December -- on December 21 of 2007, the defendant provided Total Lock with a credit card number purportedly for a Corps of Engineers Visa credit card, in order for Total Lock to obtain the sale proceeds relative to the sham lockset sale and the sham replacement lockset sale. Total Lock attempted to process the sales with the credit card number provided by the defendant but the transactions failed

each time.

In reality and in truth, the credit card number provided by this defendant was the number to the United States Government Visa credit card he had been issued while serving in the Missouri Army National Guard, and that card had expired during June of 2007.

At the end of December, on the 28th of December, 2007, this defendant, falsely identifying himself as Corps of Engineer contracting officer Terri Morstatter, and using the same Hotmail e-mail account, provided false information to Total Lock as to the purported shipping address relative to both of those sham sales. Again, in reality there existed no Corps of Engineer contracting officer named Terri Morstatter.

On January 28, 2008, The Installers Company made the remaining payment of $63,295.55 to its South Dakota supplier relative to the sham lockset sale. The locksets were later shipped by its vendor to Total Lock during February of 2008.

And as to the wire, the precise wire count, Judge, Count I: On or about October 15, 2007, the Government would have proven that here in the Eastern District and elsewhere, this defendant, for the purpose of executing and attempting to execute the above-described scheme to defraud and deprive Total Lock of the right to his honest services, and to obtain money from Total Lock by means of materially false and fraudulent pretenses, representations, and promises, did

1  knowingly cause to be transmitted by means of wire

2  communications in interstate commerce, certain writings,

3  signs, signals, pictures, or sounds, namely a facsimile

4  transmission from Total Lock in St. Louis, Missouri, at a

5  phone number (314)739-4932, to Quest, its supplier, in

6  Aberdeen, South Dakota, at a fax number of (605)229-8805,

7  conveying the order for 564 Vingcard brand electronic locksets

8  at a price of $91,847 relative to the sham lockset sale.

9       Judge, as to Count II, the Government would have

10 proven as to the mail fraud that on or about October 15 of

11 2007, again here in the Eastern District of Missouri and

12 elsewhere, this defendant, for the purpose of executing and

13 attempting to execute the above-described scheme to defraud

14 and deprive Total Lock of the right to his honest services and

15 to obtain money from Total Lock by means of materially false

16 and fraudulent pretenses, representations, and promises, did

17 knowingly cause to be delivered by the United States Postal

18 Service, according to the directions thereon, The Installers

19 Company Check Number 1767, drawn on the Heartland Bank of St.

20 Louis, Missouri, in the amount of $30,615.80, and payable to

21 Quest relative to the sham lockset sale from Total -- and it

22 was mailed from Total Lock at 11772 Westline Industrial Drive

23 here in St. Louis, Missouri, to Quest at 523 Camelot Drive in

24 Aberdeen, South Dakota.

25      Judge, as to Counts V through XXII, the evidence

1    would prove that during in or about March and April of 2008,

2    this defendant met with members of the Gerald, Missouri Police

3    Department, as well as Gerald, Missouri officials, and

4    represented that he was a federal law enforcement agent

5    detached from a federal task force in order to assist the

6    Gerald, Missouri Police Department in narcotics

7    investigations.

8        This defendant had fake and sham business cards made

9    up, along with fake and sham credentials falsely identifying

10   himself as a federal law enforcement agent.  The defendant

11   assumed a position of trust with the Gerald, Missouri Police

12   Department based upon his false representations.

13        The evidence would show that on or about April 24,

14   2008, this defendant falsely assumed, pretended to be, and

15   represented himself to be U.S. DEA special agent while

16   separately engaged and arresting two individuals by the

17   initials M.H. and H.H., and in separately searching residences

18   at 15 North Bernhardt in Gerald, Missouri, and 645 South Main

19   Street in Gerald, Missouri.

20        The evidence would show on that same date, April 24

21   of 2008, this defendant falsely assumed, pretended to be, and

22   represented himself to be a special agent of the United States

23   Department of Justice Multi Jurisdictional Narcotics Task

24   Force while separately engaged in arresting individuals with

25   the initials D.R. and T.W., and in separately searching

1  residences at 7246 Antioch Road, Franklin County, Missouri,

2  and 646 South Main Street, Gerald, Missouri.

3       Judge, the evidence would show that on that same

4  date, April 24 of 2008, this defendant falsely assumed,

5  pretend to be, and represented himself to be a United States

6  Marshal while engaged in searching a residence at 455 East

7  Canaan Road, Gerald, Missouri.

8       On the next day, April 25, 2008, the evidence would

9  show that this defendant falsely assumed, pretended to be, and

10  represented himself to be a United States DEA special agent

11  while engaged in arresting an individual with the initials

12  M.H., and in searching a residence at 15 North Bernhardt,

13  Gerald, Missouri.

14       Judge, that would -- the evidence would show that

15  that same individual and that same residence was searched --

16  was arrested and that same residence was searched the day

17  before, April 24.

18       The evidence would further show, Judge, on April 25

19  of 2008, this defendant falsely assumed, pretended to be, and

20  represented himself to be a special agent of the United States

21  Department of Justice Multi Jurisdictional Narcotics Task

22  Force while separately engaged in arresting an individual with

23  the initials J.D., and also in detaining an individual with

24  the initials A.B., and also in searching a residence at 323

25  West 6th Street in Gerald, Missouri.

1    On the next day, April 26 of 2008, the evidence would

2    show that this defendant falsely assumed, pretended to be, and

3    represented himself to be a special agent of the United States

4    Department of Justice Multi Jurisdictional Narcotics Task

5    Force while engaged in searching a residence at 924 South Old

6    Potosi Road in Gerald, Missouri.

7    Two days later, Judge, the evidence would show that

8    on or about April 28 of 2008, this defendant falsely assumed,

9    pretended to be, and represented himself to be a special agent

10   of the United States Department of Justice Multi

11   Jurisdictional Narcotics Task Force while separately engaged

12   in arresting individuals with the initials J.R. and A.E., and

13   in searching a residence at 34 Pear Tree in Gerald, Missouri.

14   Judge, the Government's evidence would also show that

15   during several of the arrests that I've detailed, this

16   defendant physically restrained the victims by placing them in

17   handcuffs.  The evidence would also show that on all of these

18   occasions the defendant was armed, sometimes with a pistol,

19   sometimes with a shotgun, and he used those weapons relative

20   to restraining those victims and searching those residences.

21   Judge, finally, as to Count XXIII, the Government's

22   evidence would show that on May 9 of 2008, this defendant,

23   Bill Jakob, was interviewed by a special agent of the Federal

24   Bureau of Investigation, an agency of the United States,

25   relative to that agency's investigation into allegations that

1　Jakob had falsely represented that he was a federal law

2　enforcement agent in arresting individuals and searching

3　residences in and about Gerald, Missouri.

4　　　　During that interview, this defendant knowingly and

5　willfully made a false, fraudulent, and fictitious material

6　statement and representation; that is, he falsely stated that

7　he had not identified himself as an agent of the United States

8　Department of Justice Multi Jurisdictional Narcotics Task

9　Force, when, in truth and in fact, he had made that false

10　representation on numerous prior occasions.

11　　　　Judge, that would be the sum and substance of the

12　evidence the Government would present should this defendant

13　have gone to trial on those 23 counts.

14　Q　(BY THE COURT) Mr. Jakob, is what the Assistant U.S.

15　Attorney said true?

16　A　Yes, sir.

17　Q　Did you do what he says you did?

18　A　Yes, sir.

19　Q　Do you understand that the term of imprisonment on Count

20　I is a term of not more than 20 years?

21　A　Yes, sir.

22　Q　Fine of not more than $250,000?

23　A　Yes, sir.

24　Q　As to Count II, the maximum term of imprisonment is 20

25　years and a fine of not more than $250,000?

1   A    Yes, sir.

2   Q    Do you understand that, sir?

3   A    Yes, sir.

4   Q    As to Counts III and IV, as to each count the term of

5   imprisonment is not to be more than three years and a fine of

6   not more than $250,000.  Do you understand that?

7   A    Yes, sir.

8   Q    As to Counts V through XXII, the maximum term of

9   imprisonment on each count is a term of not more than three

10  years, and as to each count a fine of not more than $250,000.

11  Do you understand that?

12  A    Yes, sir.

13  Q    And as to Count XXIII, the maximum term of imprisonment

14  is a term not to exceed five years and a fine of not more than

15  $250,000.  Do you understand that, sir?

16  A    Yes, sir.

17  Q    You could be sentenced to the maximum term of

18  imprisonment on each count added together or added -- or the

19  maximum fine on each count added together or both.  Do you

20  understand that, sir?

21  A    Yes, sir.

22  Q    And that in addition to any term of imprisonment that may

23  be imposed, a period of supervised release on Count I of not

24  more than five years, on Count II of not more than five years,

25  on Counts III and IV of not more than one year, and as to

1    Counts V through XXII terms of not more than one year, and as

2    to Count XXIII a term of supervised release of not more than

3    three years.  Do you understand that, sir?

4    A    Yes, sir.

5    Q    Do you understand what supervised release is, is after

6    you're released from custody, you will be released subject to

7    certain conditions and remain under the Court's jurisdiction.

8    If you violate the conditions of your release, you can be

9    returned to prison, the length of your supervised release

10   could be extended, or other terms and conditions could be

11   placed on your release.  Do you understand that?

12   A    Yes, sir.

13          THE COURT:  Is there any restitution?

14          MR. GOLDSMITH:  Judge, there may be.  There may be.

15   Q    (BY THE COURT) Under the Mandatory Victims Restitution

16   Act, I may be required to order you to pay any victims of the

17   offense any losses that they may have incurred, and that's an

18   example of something that maybe we'd have to have a hearing

19   on.

20          A presentence report would identify any victims and

21   any economic losses they incurred.  You may agree or disagree.

22   The Government may agree or disagree with what those are.  And

23   then we would have a hearing to determine that finally at the

24   time of your sentence.  Do you understand that?

25   A    Yes, sir.

1 Q   In addition, you will be required to pay a special

2 assessment in the amount of $100 per count at the time of

3 sentencing.  Do you understand that?

4 A   Yes, sir.

5 Q   Do you understand that by pleading guilty you're

6 subjecting yourself to the maximum sentences I've just

7 described to you?

8 A   Yes, sir.

9 Q   Now, at the time of sentencing, your lawyer and the

10 Government's lawyer may make recommendations to me about what

11 your sentence should be, both within the guideline range

12 that's recommended or otherwise.  Do you understand that?

13 A   Yes, sir.

14 Q   But I'm not required to follow their recommendation.  Do

15 you understand that?

16 A   Yes, sir.

17 Q   However, consistent with the plea agreement, because I

18 won't accept it until the time of sentencing, if I determine

19 to sentence you to some sentence outside the recommended

20 range, I will give you an opportunity at that time to withdraw

21 your plea agreement.  Do you understand that?

22 A   Yes, sir.

23 Q   If, after that, the sentence I impose is more severe than

24 the lawyers recommend or more severe than you had expected,

25 that won't be a basis for you to seek to withdraw your guilty

1  plea.  Do you understand that?

2  A    Yes, sir.

3  Q    Do you understand that by pleading guilty you may lose

4  the right to vote, the right to hold public office, the right

5  to serve on a jury, and the right to possess a firearm?

6  A    Yes, sir.

7  Q    Do you understand that parole has been abolished, and if

8  you were sentenced to prison you will not be released on

9  parole?

10  A    Yes, sir.

11  Q    Mr. Jakob, do you understand the possible consequences of

12  pleading guilty today, sir?

13  A    Yes, sir.

14  Q    After all the things we've talked about, is it still your

15  decision to plead guilty?

16  A    Yes, sir.

17        THE COURT:  Does the attorney for the United States

18  or the attorney for Mr. Jakob know of any reason why I should

19  not accept his guilty plea?

20        MR. SCHWARTZ:  No, Your Honor.

21        MR. GOLDSMITH:  No, Judge.

22        THE COURT:  Mr. Jakob, how do you plead to Count I of

23  the indictment, sir?

24        THE DEFENDANT:  Guilty, sir.

25        THE COURT:  How do you plead to Count II of the

1   indictment, sir?

2           THE DEFENDANT:  Guilty.

3           THE COURT:  How do you plead to Count III?

4           THE DEFENDANT:  Guilty.

5           THE COURT:  How do you plead to Count IV?

6           THE DEFENDANT:  Guilty.

7           THE COURT:  How do you plead to Count V?

8           THE DEFENDANT:  Guilty.

9           THE COURT:  How do you plead to Count VI?

10          THE DEFENDANT:  Guilty.

11          THE COURT:  How do you plead to Count VII?

12          THE DEFENDANT:  Guilty.

13          THE COURT:  How do you plead to Count VIII?

14          THE DEFENDANT:  Guilty.

15          THE COURT:  How do you plead to Count IX?

16          THE DEFENDANT:  Guilty.

17          THE COURT:  How do you plead to Count X?

18          THE DEFENDANT:  Guilty.

19          THE COURT:  How do you plead to Count XI?

20          THE DEFENDANT:  Guilty.

21          THE COURT:  How do you plead to Count XII?

22          THE DEFENDANT:  Guilty.

23          THE COURT:  How do you plead to Count XIII?

24          THE DEFENDANT:  Guilty.

25          THE COURT:  How do you plead to Count XIV?

1          THE DEFENDANT:  Guilty.

2          THE COURT:  How do you plead to Count XV?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  How do you plead to Count XVI?

5          THE DEFENDANT:  Guilty.

6          THE COURT:  How do you plead to Count XVII?

7          THE DEFENDANT:  Guilty.

8          THE COURT:  How do you plead to Count XVIII?

9          THE DEFENDANT:  Guilty.

10          THE COURT:  How do you plead to Count XIX?

11          THE DEFENDANT:  Guilty.

12          THE COURT:  How do you plead to Count XX?

13          THE DEFENDANT:  Guilty.

14          THE COURT:  How do you plead to Count XXI?

15          THE DEFENDANT:  Guilty.

16          THE COURT:  How do you plead to Count XXII?

17          THE DEFENDANT:  Guilty.

18          THE COURT:  How do you plead to Count XXIII?

19          THE DEFENDANT:  Guilty.

20          THE COURT:  Based upon Bill Anthony Jakob's

21   statements under oath in response to my questions, I find that

22   he is competent to enter pleas of guilty to the offenses

23   charged in Count I through XXIII of the indictment, that his

24   pleas are made knowledgeably and voluntarily, and that they

25   have a basis in fact that contains all the elements of the

1  offenses charged.  Therefore, I will accept his pleas of

2  guilty and will enter judgment upon those pleas.

3          We will reserve the decision to accept or reject the

4  plea agreement at the time of sentencing.  Sentencing is set

5  for Friday December 19, at 9:30 AM.  Any other matters for the

6  Court's consideration today?

7          MR. SCHWARTZ:  No, Your Honor.

8          MR. GOLDSMITH:  Not from the Government, Your Honor.

9          THE COURT:  All the conditions of your bond remain in

10  effect.  We will see you on December 19.

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Thank you.

13              **(PROCEEDINGS CONCLUDED AT 10:55 AM.)**

14

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATE</u>

I, Shannon L. White, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 40 inclusive and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

Dated at St. Louis, Missouri, this 16th day of October, 2008.

_____
/s/Shannon L. White
Shannon L. White, RMR, CRR, CCR, CSR
Official Court Reporter